BONNET, Respondent, *v.* SEEKINS, Appellant.

No. 9044.

Submitted November 7, 1952. Decided April 17, 1952.

243 Pac. (2d) 317.

Mr. Paul T. Keller, Mr. Melvin E. Magnuson, Helena, for appellant.

Messrs. Doyle & Francisco, Conrad, for respondent.

Mr. Magnuson and Mr. Doyle argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff, a member of the Blackfeet Tribe of Indians, brought this action to recover the sum of $1,500 as rental alleged to be due under the terms of a written lease, and the further sum of $1,965 as damages alleged to have been sustained because of damage to the property covered by the lease.

The complaint consisted of two causes of action. The first was to recover the rental and the second the damages. The court instructed the jury to return a verdict for plaintiff for $1,500 on the first cause of action. The jury found for plaintiff on the second cause in the sum of $125 and as instructed returned a verdict for $1,500 on the first cause of action. Judgment was entered on the verdict. Defendant's motion for a new trial was denied and he appealed from the judgment.

The lease in question covered a forty-acre tract of land held by plaintiff under an allotment. The lease was written on October 11, 1946, and signed on October 25th. It was approved by the superintendent of the Indian agency on December 6th. It was for a five-year term beginning on January 1, 1947, with the payment of $1,500 rental upon approval of the lease and $1,500 on December 1, 1947, and a like amount on December 1st of each succeeding year to and including 1950.

Defendant by his answer admitted the execution of the lease and its terms and by way of cross-complaint alleged that on October 12, 1946, a sublease was executed by plaintiff and her husband to defendant covering a tract of 1500 acres for the period of five years commencing on January 1, 1947; that the rental was $1,500 per year payable yearly in advance; that the $1,500 was the same $1,500 rental referred to in plaintiff's

complaint as the consideration for the 40 acres and that the one consideration of $1,500 was to cover both leases; that the 40 acres and the 1500 acres constituted a farm and grazing unit which defendant desired to use in the operation of a dairy; that in April 1947 defendant was notified by the superintendent of the Blackfeet Indian agency at Browning that the 1500 acre sublease was void and of no effect because plaintiff and her husband had no authority to execute the sublease; that in consequence defendant was compelled to dispose of his dairy business and livestock.

He alleged damages by reason of the forced sale in the sum of $2,463.58. The reply or answer to the cross-complaint admitted the execution of the sublease referred to in the cross-complaint and that defendant commenced the operation of a dairy on the premises and procured cows and equipment therefor and denies each and every other allegation in the cross-complaint.

There was no evidence offered in support of the cross-complaint and at the conclusion of defendant's case the following proceedings took place: "Mr. Doyle: At the close of the defendant's case the plaintiff requests the Court to withdraw from the consideration of the jury the counter claim contained in the answer and cross-complaint of the defendant. The Court: Any objection? Mr. Werner: No objection. The Court: The motion is granted and the counterclaim is withdrawn."

Defendant's first contention is that since plaintiff is a ward of the United States and since the 40 acres involved in the lease is trust patented land, the state court had no jurisdiction. The question was raised by defendant by objecting to the introduction of any evidence on that ground.

In 27 Am. Jur., Indians, p. 554, sec. 21, it is said: "It has, furthermore, been almost uniformly held that Indians may sue or be sued in state courts, since the latter are generally open to all persons irrespective of race, color, or citizenship."

A leading case announcing this view is that of Felix v. Patrick, 145 U. S. 317, 12 S. Ct. 862, 36 L. Ed. 719. Our Constitution,

Article III, sec. 6, commands that, "Courts of justice shall be open to every person". Certainly Indians are persons and as such are entitled to maintain actions to redress wrongs.

Such is the holding of courts generally.

In Bem-Way-Bin-Ness v. Eshelby, 87 Minn. 108, 91 N. W. 291, 293, the same contention was made as here. The action was by Tribal Indians to recover possession of land. The court in speaking of the question said: "This brings us to the question whether the plaintiffs may maintain their original action in the state court, although they are tribal Indians, and not citizens. This is an interesting and important question, and at the outset it is well to note that no officer or agent having charge of the Indians is here making any objection to the plaintiffs' maintaining their action, but that white men, citizens of this state, who are, as the plaintiffs allege, in possession of their land, over which the state and its courts have plenary jurisdiction, are the only parties questioning the jurisdiction of the court; and, further, that the federal courts have no jurisdiction of the action, and that, if the state court has not, then the plaintiffs have no adequate or practical remedy to redress the alleged wrong. Our state constitution (article 1, sec. 8) provides that: 'Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without purchase; completely and without denial; promptly and without delay, conformably to the laws.' This opens the door of our courts to all persons, irrespective of race, color, creed, citizenship, or condition. Why, then, should that door be closed on the sole demand of the defendants against the plaintiffs, who only seek a fair opportunity to establish their alleged property rights?" The court concluded that the state court had jurisdiction.

It has been held that the state courts have jurisdiction of an action by an Indian ward of the government to recover the reasonable value of the use of lands as mesne profits against one holding a lease on allotted land which was void for want of approval by the superintendent of the Indian agency or the

proper United States official. Holden v. Lynn, 30 Okl. 663, 120 Pac. 246, 38 L. R. A., N. S., 239; Phillips v. Reynolds, 79 Neb. 626, 113 N. W. 234.

In recognition of the rule that the courts of a state are open to all persons irrespective of race, color or citizenship, the Supreme Court of New Mexico has held that the state courts have jurisdiction to appoint an administrator for a deceased reservation Indian to enforce the right of action for wrongful death. Trujillo v. Prince, 42 N. M. 337, 78 Pac. (2d) 145. See also Martinez v. Martinez, 49 N. M. 83, 157 Pac. (2d) 484, involving water rights; Kohlmeyer v. Wolverine Oil Co., 37 Okl. 477, 132 Pac. 497, involving possession and ownership of lands for oil and gas purposes. And compare Brown v. Anderson, 61 Okl. 136, 160 Pac. 724; and Red Hawk v. Joines, 129 Or. 620, 278 Pac. 572.

In Missouri Pac. Ry. Co. v. Cullers, 81 Tex. 382, 17 S. W. 19, 21, 13 L. R. A. 542, plaintiff was the assignee of Black, an Indian. The question was whether Black had any right to sue and if not whether he could transfer the right to plaintiff. The court said: "If, however, it were necessary for us to decide the question, we think we would have little difficulty in holding that an Indian, like Black, is a 'person' within the meaning of our state constitution and laws, and is thereby guaranteed the right of redress for injuries done to him 'in his person, property, or reputation.' If he is not a *person*, then what is he?"

In 42 C. J. S., Indians, p. 652, sec. 8, it is said: "Indians generally may sue in the federal and state courts on causes of action otherwise within the jurisdiction of the particular court. * * * Actions which have been held maintainable by Indians include such actions as ejectment, replevin, an action for the diversion of water on the public domain, an action for breach of contract, an action to redress any wrong committed outside the limits of his reservation against his person or property, or an action to recover an allotment of land unlawfully denied him, as discussed infra sec. 52."

In Smith v. Northern Pac. Ry. Co., 57 Mont. 14, 186 Pac. 684, 686, this court said: "It has been repeatedly held that by virtue of the act of February 8, 1887, supra [24 Stat. 390, 25 U. S. C. A. sec. 349], Indians who have severed their tribal relations and taken allotments are citizens and entitled to institute or defend actions of ejectment or trespass in state or federal courts, regardless of the prohibition against the alienation of the lands obtained under their allotment."

The court did not err in overruling defendant's objection going to the question of the jurisdiction of the court to hear the case.

Defendant next contends that the court erred in instructing ▇▇▇▇ the jury to award the plaintiff as rent the sum of $1,500 as demanded in the first cause of action. Defendant's contention is that the proof offered by defendant made a jury question as to whether defendant held over beyond the period or term for which the rent was paid. His position is that the down payment of $1,500 paid the rent until December 31, 1947, even though the second payment was due on December 1, 1947, and that his testimony was to the effect that the lease terminated on December 31, 1947, by defendant's act in abandoning the property. The fallacy of this argument rests in the fact that a five-year lease may not be abandoned or terminated in this manner. Defendant gave no notice to plaintiff of any intention to terminate the lease. The obligation to pay the agreed rental continues until the lease is legally terminated. 52 C. J. S., Landlord & Tenant, secs. 490, 494, pp. 264, 272, et seq.

A lease for a fixed term may not be terminated by the act ▇▇▇▇ of the tenant in abandoning the property before the end of the term in the absence of consent on the part of the landlord. 52 C. J. S., Landlord & Tenant, sec. 497, p. 274. The landlord's consent to the surrender or abandonment may be either express or implied. 52 C. J. S., Landlord & Tenant, sec. 493, p. 269.

"A surrender cannot be effected by the act of only one party; the concurrence, in some way, of both lessor and lessee is neces-

sary in order to accomplish a surrender." 3 Thompson on Real Property, p. 750, sec. 1491. "The surrender of leased premises by the tenant before the expiration of the term is not effective unless there is an acceptance by the landlord. Any act equivalent to an agreement on the part of the tenant to abandon and the landlord to resume possession is sufficient to constitute a surrender." Id., p. 751.

Here there was consent to the abandonment so as to affect subsequently accruing rent and this plaintiff evidently concedes, because she is merely suing for one year's rental. But the surrender of premises for a fixed term does not discharge the tenant from liability for rent already accrued. 52 C. J. S., Landlord & Tenant, secs. 494, 497, pp. 272, 276.

Here defendant testified that he abandoned the premises on December 31, 1947. That act alone would not discharge his obligation to pay rent already accrued, unless plaintiff by her words or acts so intended.

In 3 Thompson on Real Property, p. 778, sec. 1505, it is said: "A completed and accepted surrender of the premises does not relieve the tenant from liability for rents accrued at the time of surrender, but he is relieved from liability for future rents."

In Tiffany on Landlord & Tenant, Vol. 1, p. 1167, sec. 182g, after stating that a surrender has the effect of extinguishing rentals, it is said: "This is true, however, only as regards rent subsequently to become due, and the landlord has the same right as before the surrender to rent which had already become due, even though it was payable in advance, and the surrender occurs immediately after the rent day." Compare: Stern v. Murphy, Sup., 102 N. Y. S. 797; Barkley v. McCue, 25 Misc. 738, 55 N. Y. S. 608; Rockwell v. Eiler's Music House, 67 Wash. 478, 122 Pac. 12, 39 L. R. A., N. S., 894.

The rule is stated in 18 A. L. R. 967 as follows: "Since a surrender and acceptance of a term does not relieve a tenant from liability for rent already accrued at the time of the surrender, and since rent payable in advance is considered as accruing on the day on which it is due, the surrender of a term

between rent days does not release the lessee from the payment of rent for the whole rental period, where it is payable in advance.''

What the rule would be, had there been a surrender and acceptance between the 1st day of December 1947 when the rent became due and the 31st day of December 1947 which marked the end of the term for which the rent had been paid, is a question not presented here, for in this case everything that plaintiff did that could possibly be construed as an acceptance of the surrender took place after the middle of January 1948 and after the second installment of rent was due and after expiration of the term for which the first year's rental had been paid.

The record shows that plaintiff's husband inspected the premises about the middle of January 1948 and again about six weeks later and found a family living on the place. This family moved onto the place with defendant's permission and remained there until September 15, 1948. Plaintiff's husband went there the latter part of May or the first part of June and plowed about 10 acres and planted it to crop.

We find nothing in the record to justify submitting the case to the jury as to whether plaintiff waived the right to recover the rent which accrued on December 1, 1947, because of the acceptance of the surrender of the premises. It is contended that the fact that a Mr. Thomas pastured four head of horses and a colt on 160 acres, of which the 40 acres covered by the lease here involved was a part, and paid plaintiff for the rental, constituted an acceptance of the surrender of the lease so as to discharge defendant from the obligation to pay the rent accruing on December 1, 1947. The record shows that these horses were placed on the property in October 1947 and long before there was any abandonment or surrender of the premises by defendant. That fact cannot be said to be any evidence of an intention to accept a surrender of the premises when the surrender itself is not claimed to have been made until December 31, 1947.

32

Complaint is made by defendant of the refusal to give some of his offered instructions and the giving of some offered by plaintiff. We have considered these specifications of error but find no merit in any of them.

The opinion promulgated herein on January 15, 1952, is withdrawn and this opinion substituted in lieu thereof.

The judgment appealed from is affirmed and the motion for rehearing is denied.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY and FREEBOURN, concur.