In the Matter of Sandra Jean HOLY-ELK-FACE, Timothy Dean Holy-Elk-Face, Nancy Marie Holy-Elk-Face, Minors.

STATE of North Dakota, Plaintiff,

v.

Aurelia Faye HOLY-ELK-FACE (Mother) Peter Holy-Elk-Face, (Father) and Sandra Jean Holy-Elk-Face, Timothy Dean Holy-Elk-Face and Nancy Marie Holy-Elk-Face, alleged abandoned and neglected children, and The Director of the Division of Child Welfare of the Public Welfare Board of the State of North Dakota, Defendants.

No. 7807.

Supreme Court of North Dakota.

July 13, 1960.

Ernst N. Paul, Mandan, for Director of Division of Child Welfare.

John B. Hart, Rolla, amicus curiae.

Ingomar M. Oseth, Juvenile Commissioner, Burleigh County, Bismarck, amicus curiae.

PER CURIAM.

This matter comes to us pursuant to the provisions of Chapter 32–24, NDRC 1943, upon two questions certified by the District Court of Burleigh County exercising its original jurisdiction as a juvenile court under the provisions of Chapter 27–16, ND RC 1943. The action was instituted as a proceeding in juvenile court by the juvenile commissioner of Burleigh County. He filed a petition setting forth pertinent facts with respect to the parties and sought the following relief:

"Wherefore, the undersigned Juvenile Commissioner of this court prays that this court appoint a time and place for a special hearing in said matter, and, after due notice and hearing, issue its order and decree terminating the parental rights of the defendants, Aurelia Faye Holy-Elk-Face and Peter Holy-Elk-Face with respect to the said defendant children, Sandra Jean Holy-Elk-Face, Timothy Dean Holy-Elk-Face and Nancy Marie Holy-Elk-Face, and the care, custody and control of said children be transferred to the Di-

rector of the Division of Child Welfare of the Public Welfare Board of the State of North Dakota, with authority to make such provision for their placement and disposition as their welfare shall require, including the right to consent to adoption in any proper proceeding for that purpose with the same effect as if such consent were given by the actual parents of said children."

Personal service of the petition was made upon the defendant Aurelia Faye Holy-Elk-Face and service by publication was made upon the defendant Peter Holy-Elk-Face pursuant to the provisions of Section 27–1615, NDRC 1943.

A hearing was had with Aurelia Faye Holy-Elk-Face and Peter Holy-Elk-Face present in person. The Director of the Division of Child Welfare of the State of North Dakota appeared by his attorney and challenged the jurisdiction of the court to grant the relief prayed for. He made an application for certification of the question of jurisdiction to the Supreme Court in which he stated:

"Said question of jurisdiction arises by reason of the fact that the said named defendants are Indians and there is a question as to the jurisdiction of our courts to render a judgment against persons of Indian descent.

"That said question of jurisdiction is vital and of great moment in the cause and raises a question of grave public concern and that the determination of the same will principally or wholly determine the law applicable in the instant matter."

The juvenile commissioner of Burleigh County consented to the granting of the application and agreed to the certification which contained the following facts based upon evidence that had been introduced:

"1. That Aurelia Faye Holy-Elk-Face, one of the defendants, is the mother of Sandra Jean Holy-Elk-Face,

born June 1, 1952, Timothy Dean Holy-Elk-Face, born December 19, 1954, and Nancy Marie Holy-Elk-Face, born July 28, 1956, and is the wife of Peter Holy-Elk-Face, one of the defendants.

"2. That Peter Holy-Elk-Face is the father of Sandra Jean Holy-Elk-Face, born June 1, 1952.

"3. That the father of Timothy Dean Holy-Elk-Face, born December 19, 1954, and Nancy Marie Holy-Elk-Face, born July 28, 1956, is unknown.

"4. That the defendant Peter Holy-Elk-Face is an Indian person of the Sioux Tribe and is enrolled as an Indian at the Standing Rock Indian Reservation and resides in the State of Montana.

"5. That Aurelia Faye Holy-Elk-Face is an Indian person of the Sioux Tribe and enrolled as an Indian at the Fort Peck Reservation and resides within the state of North Dakota.

"6. That neither the defendant Aurelia Faye Holy-Elk-Face or the defendant Peter Holy-Elk-Face reside upon any Indian reservation.

"7. That personal service of the Notice of Hearing Petition for Termination of Parental Rights was made upon the defendant, Aurelia Faye Holy-Elk-Face within the State of North Dakota, and that service of the Notice of Hearing Petition for Termination of Parental Rights was made upon the defendant, Peter Holy-Elk-Face, by publication.

"8. That the defendants, Aurelia Faye Holy-Elk-Face and Peter Holy-Elk-Face, were personally present and in court at the hearing of said petition for termination of parental rights.

"9. That Peter Holy-Elk-Face deserted his said wife, Aurelia Faye Holy-Elk-Face, and her above named children during the year 1956 and has not since cohabited with his wife or

contributed in any manner to her support or that of the said children and has completely abandoned said children and refuses to acknowledge any responsibility or obligation to the younger of said children, namely, Timothy Dean Holy-Elk-Face and Nancy Marie Holy-Elk-Face, and has refused to acknowledge them as his children.

"10. That the defendant, Aurelia Faye Holy-Elk-Face, has for the last several years past been openly and notoriously and continuously guilty of gross moral and sexual misbehavior and has been guilty of neglecting her children to such an extent that another of her said children died as a result of said neglect and that she is wholly unfit to have the custody, care and control of her surviving children by reason of her moral depravity and vicious habits.

"11. That it is to the best interests of said children that all of the parental rights of each of said defendants, namely, Aurelia Faye Holy-Elk-Face and Peter Holy-Elk-Face be forever terminated and the care, custody and control of said children transferred to the Director of the Division of Child Welfare of the State of North Dakota, as provided by law.

"12. That presently said children are in the custody, care and control of the Burleigh County Welfare Board under a temporary custody order issued by Ingomar M. Oseth, the Burleigh County Juvenile Commissioner."

The court propounded the following two certified questions based upon the certified facts:

"I. Does the District Court (Juvenile Division) have jurisdiction to terminate the parental rights of the defendant, Peter Holy-Elk-Face, as to the above named children despite the fact that he is an Indian person enrolled at the Standing Rock Indian Reservation and who resides in the State of Montana and upon whom notice of hearing the petition for termination of parental rights was served by publication.

"II. Does the District Court (Juvenile Division) have jurisdiction to terminate the parental rights of the defendant, Aurelia Faye Holy-Elk-Face, as to the above named children despite the fact that she is an Indian person, enrolled at the Fort Peck Indian Reservation, who resides in the State of North Dakota, and upon whom notice of hearing the petition for termination of parental rights was personally served within this state."

Both of these questions the court determined in the affirmative.

We note that question number I has imbedded in it a query with respect to the validity of service of the petition on the defendant Peter Holy-Elk-Face by publication. It does not appear that the manner in which the petition was served is in issue in this proceeding. Peter Holy-Elk-Face was present in court. No objection was made by him or on his behalf to the manner of service or lack of it. The court had jurisdiction of his person insofar as it may be affected by the manner of service. Any decision on our part with respect to the validity of service by publication would be purely advisory. Our decision must be confined to issues of law. We cannot determine either issues of fact or advisory matters. State v. Elkin, 68 N.D. 93, 277 N.W. 89. The sole question before us is whether the District Court of Burleigh County had jurisdiction to terminate the parental rights of the parents of these Indian children under the facts certified by the court:

Under the provisions of Section 27–1608, NDRC 1943:

"Except as otherwise provided by law, the court shall have original jurisdiction in all proceedings: 1. Con-

cerning any child residing in or who is temporarily within the county: * * e. Whose parent or other person legally responsible for the care and maintenance of such child, neglects or refuses, when able so to do, to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary for his health, morals, or well-being, or who is abandoned by his parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship; f. Whose home, by reason of neglect, cruelty, drunkenness, or depravity on the part of the parent or person having the custody or control of such child, is an unfit place for such child to live; * * *."

Section 27–1610, NDRC 1943, makes all children coming within the provisions of the chapter wards of the state for the purposes of the chapter and subject to the care, guardianship and control of the court as therein provided.

Section 27–1627 provides that:

"The parent of a child may be found to be unfit by the court within the meaning of this chapter for any of the following reasons: 1. Depravity; 2. Open and notorious adultery or fornication; 3. Habitual drunkenness for a period of one year prior to the date of the hearing in juvenile court; 4. Extreme and repeated cruelty to the child; 5. Abandonment of the child; 6. Desertion of the child for more than six months prior to the date of the hearing in a juvenile court; 7. Willful neglect of the child; or 8. The parent found to be guilty of contributing to the delinquency of the child."

Section 27–1634, 1957 Supplement to NDRC 1943, provides for termination of parental rights for reasons falling well within the facts recited in the certification now before us. Section 27–1638, 1957 Supplement to NDRC 1943, provides that:

"Upon the termination of all parental rights, the child shall become a ward of the state and the director of the division of child welfare of the public welfare board shall be the representative of the state in all matters concerning said child. He shall have authority to give consent to the adoption of said child with the same force and effect as a consent given by the legal parent or parents."

It is clear from the certified facts that there are present abundant grounds for supporting the jurisdiction of the court under our statutes, unless these statutes are here rendered nugatory by the fact that these children are the offspring of parents who are enrolled Indians although neither of the parents nor any of the children resides on a reservation.

The Indians involved in this controversy are citizens of the United States and of the state in which they reside. The children and the mother are residents of North Dakota. The father is a resident of the state of Montana. It may be inferred from the record before us that the acts of the parents which constitute grounds for terminating their parental rights occurred within the jurisdiction of the District Court of Burleigh County and outside of the bounds of any Indian reservation. Abandonment of a child under circumstances set forth in the certified facts is a felony under the provisions of Section 14–0715, 1957 Supplement to NDRC 1943.

"Indians, though belonging to a tribe which maintains the tribal organization, occupying a reservation within a state, are amenable to state laws for murder or other offenses against such laws, committed by them off the reservation and within the limits of the state, even though the crime is committed against an Indian of the same tribe, the Act of Congress of 1885 having deprived the tribal courts of jurisdiction in such cases." 27 Am.Jur., Indians, Section 52.

See Tooisgah v. United States, 10 Cir., 186 F.2d 93.

We have been unable to find any federal statute and none has been pointed out to us indicating any intention on the part of Congress to exercise federal authority over the relationship between Indian parents and Indian children not residing within the boundaries of a reservation or in Indian country. Neither does there appear to be any tribal law affecting the situation now before us. A court of the state is not powerless to prevent by appropriate and available civil action the continuation of the crimes of the parents committed within the exclusive territorial jurisdiction of the court.

Indian tribes and their members are generally held to be wards of the federal government until Congress terminates the relationship. 42 C.J.S. Indians § 20; 27 Am. Jur., Indians, Section 5. This relationship, however, does not place the Indian under complete legal disability nor envelop him in a mantle of complete immunity from all but federal authority in all instances and in all places. It is for Congress to determine and state the extent to which federal guardianship will be applied at least within the boundaries of Indian country.

We find no attempt on the part of Congress to deny recognition of the rule that state courts are open to all persons irrespective of race, color or citizenship as applied to civil actions by or against Indians not residing on a reservation. 42 C.J.S. Indians § 8; Bonnet v. Seekins, 126 Mont. 24, 243 P.2d 317; Trujillo v. Prince, 42 N.M. 337, 78 P.2d 145; Martinez v. Martinez, 49 N.M. 83, 157 P.2d 484. See also Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719; Missouri Pacific Ry. Co. v. Cullers, 81 Tex. 382, 17 S.W. 19, 13 L.R.A. 542.

In support of the argument against state jurisdiction Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 272, 3 L.Ed.2d 251, has been cited. In that case one who was not an Indian but who operated a general store in Arizona on the Navaho Indian Reservation under a license required by federal statute brought an action in an Arizona state court against an Indian and his wife who lived on the reservation to collect goods sold to them on credit. The jurisdiction of the state court was successfully challenged. After pointing out that the Navaho courts of Indian offenses exercise broad criminal and civil jurisdiction which covers suits by outsiders against Indians, the court said:

"There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. It is immaterial that the respondent is not an Indian. He was on the Reservation and the transaction with an Indian took place there."

In the case before us all of the incidents upon which the jurisdiction of the state court rests occurred off of the reservation and within the territorial jurisdiction of the state court. The Indian parents are not residents of any reservation. There does not appear to be any tribal law governing the conduct of Indians or their rights with respect to the facts or law upon which relief is sought. The relief sought in behalf of the state does not conflict with any federal statute or infringe upon any rights guaranteed by an Act of Congress. We agree with the trial court that the questions propounded should be answered in the affirmative. The District Court of Burleigh County has jurisdiction.

SATHRE, C. J., and MORRIS, BURKE, and TEIGEN, JJ., concur.