MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
E. B. BEARD.

Decided January 6, 1904.

1.—Railway—Fire—Negligence.
Evidence considered and held sufficient to support a verdict of recovery for cotton burned on the ground that fire was negligently communicated from the locomotive of defendant railway, though the circumstances proven (escape of sparks) occurred two and a half hours before fire was discovered.

2.—Carrier—Delivery of Cotton to.
Evidence considered and held insufficient to justify submission of claim that cotton destroyed by fire had, by the custom of dealing, been delivered to and received by a railway as a common carrier when destroyed,—the custom being one of placing on the company's platform, to be shipped by it when instructions were given.

3.—Same.
Evidence considered and held to furnish slight, if any, evidence of the receipt of cotton by a railway as a carrier,—it having been placed on its platform without execution of a bill of lading or notice to the company, and intended not for immediate shipment, but to be shipped to some person and point not yet determined, when enough had accumulated to make a car load.

4.—Same—Bill of Lading.
The execution of a bill of lading is not essential to the commencement of liability as a carrier, where the property has been received by the carrier for shipment.

5.—Railway—Fire—Contributory Negligence.
A charge holding a railway company liable absolutely for destruction of cotton placed on its platform if set on fire from its locomotives, was erroneous, in a case presenting the issue as to the owner's contributory negligence in exposing it to fire by placing it there, though a special charge relieving from liability in case of the owner's contributory negligence was given.

6.—Conflicting Charges.
Giving conflicting charges is a ground for reversal, though the law in favor of the complaining party is correctly stated in one of them.

Appeal from the County Court of McLennan. Tried below before Hon. G. B. Gerald.

*T. S. Miller* and *Clark & Bolinger,* for appellant.

*Boynton & Boynton,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by appellee against appellant for the value of ten bales of cotton, which the appellee in his petition alleged were burned and destroyed after the same had been delivered into the possession of the appellant as a common carrier, the cotton then being in its possession for shipment. Also that the fire which burned the cotton was caused and set out by the negligence of appellant. The court in its charge submitted to the jury both of the grounds alleged by the plaintiff.

The verdict of the jury in favor of the appellee, the plaintiff below, for the full amount of the cotton, is general; therefore it is impossible to determine whether it was predicated upon the liability of appellant as common carrier, or whether it is based upon alleged negligence in setting out the fire which destroyed the cotton.

It is seriously contended by appellant that the evidence is not sufficient to authorize the verdict and the judgment of the trial court against the appellant on either of the grounds alleged in the plaintiff's petition. The evidence is somewhat meager upon both of the grounds relied upon, and is less satisfactory in tending to establish the liability of the appellant as a common carrier, than on the issue of negligently causing the fire that destroyed the cotton.

As to the latter ground of recovery, there is evidence to the effect that either upon the night that the cotton was destroyed or night before, sparks were discovered coming from one of the appellant's locomotives near the cotton, and that the sparks were blowing in the direction of the cotton. The fire was not discovered until about two or two and a half hours after the sparks were noticed coming from the engine and blowing in the direction of the cotton. The appellant made no effort to establish the fact that its engines were properly operated and that they were equipped with the proper appliances to prevent the escape of sparks, but rested, it seems, its defense upon the proposition that the evidence of plaintiff upon this subject was insufficient to show that the fire which destroyed the cotton was set out by one of its engines.

While the testimony is not of the most satisfactory character, we are still of the opinion that it was of a nature that authorized the jury to conclude that the fire was set out by the engine that was discovered emitting the sparks. While it is true that about two or two and a half hours elapsed from the time that sparks were discovered coming from the engine, to the time of the discovery of the fire, still the conclusion is not unreasonable that the fire might have originated from the sparks that were discovered coming from the engine, and may have ignited or been burning the cotton or some combustible material near it some time before the fire was actually discovered. The witness who testified to seeing the sparks coming from the engine and blowing in the direction of the cotton is not certain whether he discovered the sparks on the night of the fire or the night before; but the evidence upon this subject, in our opinion, was of a character that authorized the jury to conclude that the cotton was set on fire by the sparks seen by this witness coming from one of the appellant's engines.

But, as said before, the evidence that the cotton was in the possession of the appellant as a common carrier at the time of its destruction by the fire in question, is less satisfactory than the evidence upon the issue just discussed.

The appellee, it seems, in the main relies more upon the custom or course of dealing upon the part of the railway company and those handling cotton at Eddy (the place where it was destroyed) in order to establish delivery to the company as a common carrier, than upon any evidence tending to show a contract of delivery. At the request of appellee, the court submitted to the jury by a special charge the question of appellant's liability arising from such custom or course of dealing. The evidence upon this subject, in our opinion, is not sufficient

to show that appellant, by reason of such course of dealing and custom, had received possession of the cotton for shipment as a common carrier at the time that the same was destroyed. And if upon another trial the evidence upon this subject is not stronger than that stated in the record before us, then we are of the opinion that the issue ought not to be submitted to the jury. The evidence relating to this subject merely tends to show that the course of dealing and custom was to place on the platform where the cotton was destroyed, cotton to be shipped, and that it was the expectation and intention of such parties so placing the cotton there, and also of the railway company, that the same was placed there for shipment, and would ultimately be shipped when instructions were given to that effect, or when the parties were ready for the shipment to be made; but the evidence does not show that such storage and delivery of the cotton upon the platform was by virtue of a custom or course of dealing to be thereafter regarded as then in the actual possession of the railway company as a common carrier for shipment.

On the question as to whether the cotton had been received by the appellant as a common carrier, independent of the custom and course of dealing referred to, the evidence is slight; but there is the testimony of the witness Fencemaker, the station agent of the appellant as follows: "To the best of my knowledge and belief, I had no arrangement with T. L. Warriner or any other party further than that the cotton was to be billed out as soon as placed on the platform." The T. L. Warriner referred to by this witness is the party who placed the cotton destroyed upon the platform. No bill of lading was ever issued nor was one demanded, nor was it intended that this cotton should be shipped until the plaintiff had collected upon the platform a sufficient number of bales to load a car.

Other than as stated, the evidence does not show that the railway company was informed that the cotton was there for shipment, nor was any car demanded, nor had the owner determined definitely the place to which he intended to ship the cotton, nor the time of shipment. The testimony referred to of this witness, Fencemaker, has a tendency to show that the cotton was to be billed out as soon as placed on the platform; and if this is true, such arrangement might be held as some evidence, although slight, tending to show delivery to the appellant of the cotton in question as a common carrier.

We do not mean to say that the evidence of this witness, considered alone, establishes the fact that the cotton in question was delivered to appellant as a common carrier, and that it received it as such, but we merely intimate the opinion that it may be considered as a slight circumstance, in connection with other evidence, if any should be developed, as tending to show delivery to the carrier of the cotton in question. The force of this evidence is much weakened by the testimony of the witness Warriner, who placed the cotton upon the platform, and who was a witness in behalf of the plaintiff, to the effect that it was not expected to ship the cotton immediately, but that the same would be shipped as

soon as the witness Warriner, who bought the cotton in question, had purchased a carload. He states that he did not know when he would ship out the ten bales in question. He had not decided where to ship it to or to what person to ship it to, and had not applied for a bill of lading, because he says that it was then not ready to be shipped out. He further states: "I do not know that the agent, Mr. Fencemaker, knew that this cotton was on the platform at the time of the fire, but I suppose that he knew it, although I did not have any agreement or understanding with him at all about it."

The plaintiff, Beard, in his testimony states that he had no knowledge as to how or when this cotton was placed on the platform, and that Mr. Warriner, the witness above referred to, attended to this business, and that the plaintiff had nothing to do with it.

The writer expresses the opinion that neither the evidence of custom or that tending to show actual delivery of the cotton in question is sufficient to establish the fact that at the time of its destruction it had been received and was in the possession of the appellant as a common carrier. The court has agreed that the evidence to establish delivery by custom and course of dealing is not sufficient, and the writer is also of the opinion that the same ruling should be made as to the insufficiency of the evidence on the subject of actual delivery. The most that can be said of the testimony upon this subject is that the cotton in question was placed upon the platform preparatory to delivery, and with a view that it should be delivered to and received by the carrier when it was ready to be billed out. The evidence of the witness Warriner, upon whose testimony the plaintiff in the main relies as establishing the fact of delivery, clearly shows that this cotton was not ready for shipment, and that it was not intended to be billed out until he had purchased and collected enough cotton to load a car.

Appellant's second proposition under first assignment of error contends that as the evidence fails to show that the appellant received the cotton for immediate shipment, and as no bill of lading was issued, it could not be held liable as a common carrier. We are not prepared to agree with this contention. If, as a fact, the cotton was received by the carrier for shipment, its liability would attach, although no bill of lading had been issued and it was not immediately shipped out, nor intended to be immediately shipped. If a commodity is delivered to the carrier and is received by the carrier for shipment, it may be transported to its destination without the necessity of the issuance of a bill of lading; and it may be regarded as in the possession of the carrier from the time received, although there was no instruction nor intention that the carrier should immediately start the shipment on its route. Railway Co. v. Hall, 64 Texas, 619; Railway v. Trawick, 80 Texas, 274.

We are of the opinion that appellant's second assignment of error is well taken. At the request of the appellant the court instructed the jury upon the issue of contributory negligence. The only way in which the defense of contributory negligence could be urged by the appellant would

be in opposition to that theory of the plaintiff's case in which he relies upon the negligence of the appellant in setting out the fire. If the appellant at the time of the fire had received the cotton, and it was in its possession as a common carrier, the previous negligence of the plaintiff in putting it upon the platform close to the track would not be a defense. If by the act of placing the cotton upon the platform it went into the possession of the appellant as a common carrier, the issue of contributory negligence, as insisted upon as shown by the record in this case, would not be a defense to the plaintiff's cause of action. But if the appellant had not received the cotton, and it was not in its possession as a common carrier, then the jury could consider the question of contributory negligence as a defense to that branch of the plaintiff's case where he seeks to recover from the appellant on the ground that the fire was negligently set out. Charge number 2, complained of in this assignment, is as follows: "If you find from the preponderance of the evidence that the fire which burned the cotton in question originated from the locomotive of the defendant company, then your verdict will be for the plaintiff." The objection to this charge is that it authorizes a recovery against the appellant, although the plaintiff might be held guilty of contributory negligence in placing his cotton near the railway track, where it might be burned by fire set out by passing locomotives, under circumstances that showed that such cotton, when so placed upon the platform, was not in the possession of the appellant as a common carrier. The error in this respect was not cured by the special instruction of the appellant on the subject of contributory negligence, which was given by the trial court.

We are of the opinion that appellant's third assignment of error is also well taken. Our views expressed as to the facts upon the subject of custom, in effect dispose of the questions raised in this assignment; but the charge here complained of is in direct conflict with charge number 3 asked by the appellant. We do not mean by this to say that we approve the special charge number 3 asked by the appellant, which was given by the trial court. The charge number 1, complained of in the assignment, is to the effect that if by virtue of the custom and course of dealing between the defendant and the shipper the jury should believe that the cotton in question was received by the company on its platform for shipment prior to the issuance of the bill of lading, and that cotton was allowed to accumulate until shipment should be made upon a sufficient accumulation, and that by virtue of such custom the cotton was in possession of the defendant company, then they should find for the plaintiff. The charge number 3, given at the request of appellant, is as follows: "Plaintiff can not recover of the defendant in this cause on the ground that the defendant received plaintiff's cotton and is liable as a carrier for said cotton, regardless of how it was destroyed, unless you find from the testimony that the defendant received plaintiff's cotton for immediate shipment, and that the defendant had been given shipping instructions for said cotton." There is an irrec-

oncilable conflict between the two supposed rules of law submitted by these two charges. One is upon the theory that the evidence of custom and course of dealing, in permitting cotton to accumulate upon the platform by the railway company, with the view and purpose of ultimately shipping the same, might be sufficient to constitute possession in the appellant as a common carrier. The second is predicated upon the proposition that the appellant would not be liable as a common carrier, unless the cotton was received by it for immediate shipment, and that it had received from the plaintiff shipping instructions. No argument or demonstration is necessary in order to show the conflicting views presented by these two charges.

What we have stated in effect disposes of the questions raised in appellant's fourth assignment of error. We have in effect ruled that the evidence as stated in the record is not sufficient to show a delivery by custom and usage.

We have already intimated the opinion that we do not agree with the contention of appellant that it is necessary to be shown that the cotton was intended for immediate shipment in order to hold the appellant liable as a common carrier, provided the evidence is sufficient to show that it had received the cotton, and that it went into its possession as a common carrier.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*