PETERSON et al. v. SAN ANTONIO & A. P. RY. CO.

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1914. Rehearing Denied March 18, 1914.)

CARRIERS (§ 393*)—BAGGAGE — DELIVERY TO CARRIER.

Where the agent of a passenger the afternoon preceding the purchase of a ticket over a railroad, one of whose posted rules provided that it would not accept baggage until 30 minutes before train time, and would not be responsible for baggage left on the platform, left a trunk on the platform adjoining the baggageroom, without calling it to the attention of the baggagemaster or any one else, and without knowing whether the baggageroom was then open, and it did not appear that the baggagemaster or any railroad employé knew the trunk was left there, or that there was any custom that trunks left on the platform would be treated as delivered to the carrier, the company was not liable for the loss of the trunk, as goods are not delivered to a common carrier unless accepted by it or delivered at the place where it is the company's custom to accept delivery without further requirement on the part of the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1502–1504; Dec. Dig. § 393.*]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by Mrs. William Peterson and others against the San Antonio & Aransas Pass Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Hicks, Hicks & Teagarden, Wallace H. Newton, and Chas. M. Dickson, all of San Antonio, for appellants. Taliaferro, Cunningham & Birkhead and F. R. Williams, all of San Antonio, for appellee.

CARL, J. William Peterson sued the San Antonio & Aransas Pass Railway Company for the loss of a trunk which it was alleged was worth $530. The suit was filed March 11, 1913, and subsequently Wm. Peterson died, and his widow and children were substituted as plaintiffs.

It was alleged that on July 31, 1912, the plaintiff sent two trunks to appellee's depot in San Antonio, to be taken by them as baggage to Corpus Christi, which were left on the platform; it being alleged that the trunks were delivered to appellee, and that the larger of the two was lost. It is the one that contained the articles for which recovery is sought. On the next day, August 1, 1912, when they went to get the trunks and check them out, the large one was gone, and they have never found same. The trial was before the court, and judgment was entered

for the defendant below. The plaintiffs, except Arthur J. Peterson, have appealed. Upon motion, the court filed conclusions of law and fact.

The court found that the trunk was placed upon defendant's platform adjoining the baggageroom, some time in the afternoon of July 31, 1912, and that it had the transferman's check on it. It was placed there about 6:30 p. m.; but the transferman did not call the baggageman's attention to it, and he did not know whether the baggageman was on the premises, nor whether the baggageroom was open. The owner of the trunk did not intend to take passage until the next day. And, further, that the trunk was unloaded at the customary place to unload baggage for passengers going on that road, and there was no other place where the trunk could have been unloaded before being checked; that in the afternoon of July 31, 1912, defendant's baggageroom was open for receiving baggage only from 4 p. m. to 4:45 p. m., and from 6:30 p. m. to 9:15 p. m., and when the baggageroom was closed it was not the duty of the baggagemaster to remain on the premises. The baggagemaster had control over the platform which adjoined the baggageroom. It was a rule of the company that after the last train had left at night to take all baggage left on the platform into the baggageroom for safe-keeping overnight, and next morning it would again be placed on the platform, and this rule was complied with. The court further found that it was a rule of the railway company to refuse to take charge of baggage until 30 minutes before train time, and until such baggage was actually checked, and passengers had bought tickets. This rule the court found to be reasonable, and finds further that there was no evidence that defendant or any of its agents or employés ever saw this trunk or knew that it was on the platform, and that the owner did not intend to take passage until the next day, and that said trunk was never delivered to defendant company, its agents or employés. The court also finds that on August 1, 1912, Mr. Peterson did buy tickets for himself and family and take passage to Corpus Christi.

Upon the law the court concludes: (1) That the rules and regulations of the railway company were reasonable as to receiving baggage and were enforced. (2) That it would be unreasonable to hold baggage left on the platform in the afternoon of one day by a person intending to take passage the next day to be a delivery of such baggage to the carrier, especially when the fact that such baggage so left was never called to the attention of the carrier or its agents or employés. (3) That the baggage was not lost by defendant's negligence, but by the negligence of the owner, and he is not entitled to recover.

Frank Wilkes, the man who hauled the trunk to the depot, says, as to when he put the trunk there: "This was some time in the afternoon, before dark. I put both these trunks on the platform adjoining the baggageroom of the S. A. P. depot right next to the scales where trunks are weighed. I didn't put these trunks in the baggageroom, because they won't let you until the trunks are checked. * * * I had nothing more to do with the trunks after I put them on this platform at the 'Sap' depot. I never saw the baggagemaster. I don't know whether the baggageroom was open or not. I never looked to see. I did not call anybody's attention to Mr. Peterson's trunks."

The question with which we are concerned is whether there was such a delivery of the trunk as to in any way make the railway company liable.

In East Line & R. R. Co. v. Hall, 64 Tex. 615, the liability of the company was made to depend upon whether or not it had accepted the goods. Cotton was placed upon the platform, and a good part of it had been tagged by the railway and some put in a car, but a bill of lading had not issued when the cotton burned. "The question was, Had the defendant accepted the cotton? not, Had all been done that ought to have preceded acceptance? If the defendant had taken control of the cotton and put its agents to preparing it for shipment, it had accepted the cotton."

In I. & G. N. Ry. Co. v. Pasture Co., 5 Tex. Civ. App. 188, 23 S. W. 754, Mr. Justice Fly says: "The liability of a railway company as a common carrier attaches whenever the shipper has done all that is required of him to prepare his property for shipment, and has delivered the same to the railway company and *it has been accepted.*"

Goods will not be construed as delivered to a common carrier, unless accepted by the company, or the same are delivered at the customary place for shipment and a custom is shown that delivery at such place is accepted by the company, without further requirement on part of the shipper. But to constitute a delivery of chattels, in the absence of some special feature or understanding, implies an acceptance. In this case it is not contended that there was an acceptance of the trunk, unless it is based upon a constructive acceptance from custom. It was shown, however, and not disputed, that the rules of the company were posted to the effect that it would not accept baggage until 30 minutes before train time, and would not be responsible for baggage left on the platform. Nor is it contended that the baggagemaster or any agent or employé of the company knew the trunk was left there. The man who hauled the trunk there says he did not see the baggagemaster or anybody else, nor does he even know whether the baggageroom was open. He put the trunks out and drove off. He was the agent of the

shipper, and, as such, owed certain duties to the railway company before it could be expected that his principal could hold the company liable. If a party is to be held liable for property, he has a right to know when that duty begins. All the cases we have found hold that there must first be an acceptance, unless based upon an established custom of dealing. And then the custom would be construed as the acceptance. But that custom was not proven in this case. The witness Hildebrand says that his company hauled 90 per cent. of the trunks to that depot. He had been engaged in such business for years, and says most emphatically that there was no such custom; that it was the custom for the man who hauled it to stay with the baggage either till the owner came or until the baggagemaster checked it in. And the trial court has found with such evidence.

In a stronger case than this one, Chief Justice Fisher holds that the evidence was not sufficient to show either a delivery to the carrier or to establish a custom. M., K. & T. Ry. Co. v. Beard, 34 Tex. Civ. App. 191, 78 S. W. 253. This case approves the doctrine laid down in Railway v. Hall, 64 Tex. 619, and in Railway v. Trawick, 80 Tex. 274, 15 S. W. 568, 18 S. W. 948, where it is shown that acceptance is necessary to bind the company.

Appellants cite H. E. & W. T. Ry. Co. v. Anderson, 147 S. W. 353, in support of their contention that there was an acceptance by custom, and as to the unreasonableness of the rules of the company in reference to checking baggage. But we find nothing in that case to. sustain that contention. The court there said: "For the safe-keeping of such baggage deposited with them a reasonable time before the departure of the train, the railroad company would be liable as common carriers (Fleischman v. Southern Ry. Co., 76 S. C. 237, 56 S. E. 976, 9 L. R. A. [N. S.] 519, and cases cited), but in the present case we think, as matter of law, from the afternoon of one day until the forenoon of the next, as testified to by appellee, was an unreasonable time, and that appellant was only liable as warehouseman, which in this case makes no material difference. As to the admissibility of the evidence as to the custom referred to, and its effect in showing delivery to appellant, we think the authorities establish, with reasonable uniformity, the rule that 'by custom or usage the placing of goods in the usual place of delivery to the carrier may amount to a sufficient delivery and acceptance, although no notice to the agent of the carrier is shown.'

6 Cyc. 414. The doctrine is also stated that 'a regulation that baggage shall not be checked until a ticket is procured is reasonable, but the carrier cannot limit its liability by refusing to take charge of baggage until the procurement of a ticket.' 6 Cyc. 670. The doctrine stated in Cyc. finds support also in the following authorities: Hutchinson's Carriers, §§ 90, 91; Montgomery & Eufala R. R. Co. v. Kolb, 73 Ala. 396, 49 Am. Rep. 57, 58; Green v. M. & P. Ry. Co., 38 Iowa, 100; Id., 41 Iowa, 410; G., C. & S. F. Ry. Co. v. Pool, 10 Tex. Civ. App. 682, 31 S. W. 689."

As we view the matter, the plaintiffs below failed in two particulars to discharge the burdens resting on them: (1) They did not establish a custom upon which they could rely. (2) And utterly failed to show any acceptance of the trunks by the company, or to show that its agents knew anything about them.

In Gregory v. Webb, 40 Tex. Civ. App. 360, 89 S. W. 1109, the court held that the mere placing of a trunk by a transfer company in the baggageroom was not a delivery to the depot company, and that such company was not liable for its loss. "The plaintiff, Sam Webb, employed the transfer company to take his trunk to the depot for shipment on one of the outgoing trains; plaintiff intending to check it when he reached the depot. A servant of the transfer company took the trunk to the depot and placed it in the entrance of the baggageroom, without calling it to the attention of any agent of the depot company, or advising any one to whom the trunk belonged. There is evidence that one Greenleaf, who left on an earlier train than plaintiff, mistook plaintiff's trunk for his own, and had it checked out as such. The baggagemaster had not been advised, and did not know, to whom the trunk belonged. To hold that the placing of the trunk in the baggageroom was of itself delivery of the trunk to the depot company or baggagemaster would, in effect, impose upon the depot company the duty of requiring each one who claimed such baggage for shipment to identify himself as the owner in the most absolute way, and would render the prompt handling of baggage practically impossible."

A passenger is bound to look after his own property until it is delivered and accepted by the carrier; or at least until he has complied with an established custom of the carrier in dealing with the public, in reference to the receipt of baggage. Neither of these is shown to have been done, and the plaintiff cannot recover.

Judgment affirmed.