MOOSE v. MISSOURI, K. & T. RY. CO. OF TEXAS.    (No. 6978.)

(Court of Civil Appeals of Texas. Galveston. June 28, 1915. Rehearing Denied Oct. 7, 1915.)

1. RAILROADS ⬤⟾484—OPERATION — FIRES— QUESTION FOR JURY.

In an action against a railway company for the destruction of plaintiff's house by fire from the spark of a locomotive, evidence *held* to justify direction of verdict for defendant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746; Dec. Dig. ⬤⟾484.]

2. RAILROADS ⬤⟾481 — OPERATION—FIRES— EVIDENCE—ADMISSIBILITY.

In an action for the destruction of plaintiff's house by fire from defendant's locomotive, evidence that engines had thrown out sparks on the right of way the day before was properly excluded, where it appeared that, if the fire was caused by sparks from any engine, it was from a certain engine that had passed at the time of the fire, and as to the construction, operation and condition of which the inquiry should be limited.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1717–1729; Dec. Dig. ⬤⟾481.]

3. APPEAL AND ERROR ⬤⟾1170—REVIEW— HARMLESS ERROR.

In an action for the destruction of plaintiff's house by fire from defendant's locomotive, the admission of the conductor's report as to the arrival of the train at a certain station, not verified by evidence that it was correctly kept, was harmless error, under rule 62 for the Court of Civil Appeals (149 S. W. x), providing that no judgment shall be reversed for errors not reasonably calculated to cause the rendition of an improper judgment, or a denial of the rights of appellant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. ⬤⟾1170.]

Error from District Court, Harris County; Wm. Masterson, Judge.

Action by J. W. Moose against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for defendant, and plaintiff brings error. Affirmed.

L. E. Blankenbecker, of Houston, for plaintiff in error. Baker, Botts, Parker & Garwood and W. A. Parish, all of Houston, for defendant in error.

LANE, J. Plaintiff in error, J. W. Moose, sued defendant in error to recover damages in the sum of $1,000 for the loss of a certain house destroyed by fire, which he alleges was caused by sparks from one of defendant's locomotives on the 2d day of June, 1913, which were negligently permitted to escape and fall upon plaintiff's said house and thereby burn and destroy the same. The defendant company answered by general demurrer, general denial, and denying that any engine or locomotive operated by it was defective in its machinery, appliances, or equipment, or that it was negligently operated so as to cause sparks to escape therefrom, which were the proximate cause of the fire which destroyed plaintiff's house; that the only locomotive of defendant which passed the premises of plaintiff on June 2, 1913, between midnight and 6:30 a. m., the time plaintiff's house was destroyed, was its locomotive No. 491, and that said locomotive was properly equipped with the best and most approved mechanical appliances then in use for the prevention of the escape of sparks; that it was carefully and skillfully operated when it passed plaintiff's premises shortly before the time plaintiff's house was destroyed; and that plaintiff's house was not destroyed by defendant or any of its agents or employés. Plaintiff by supplemental petition denied all the material defenses pleaded by defendant. Upon these pleadings the case was tried before a jury. After both parties had closed their evidence, the court instructed the jury that plaintiff had failed to show that his house was destroyed by fire set out by defendant's locomotive, and that therefore they should return a verdict for the defendant. Upon such instruction the jury returned their verdict as follows: "We, the jury, find for the defendant." Thereupon judgment was rendered for defendant.

[1] Plaintiff in error by his first assignment insists that the evidence was sufficient to require the court to submit the issue to the jury, and that the court erred in instructing a verdict for defendant. After a careful examination of the statement of facts we have reached the conclusion that the evidence admitted wholly fails to connect defendant with the fire which destroyed plaintiff's house, and that the court did not err in so finding, and if there be no error in the other rulings of the trial court, complained of by appellant, which should cause a reversal, the judgment rendered by the trial court should be affirmed.

The undisputed evidence shows that the house of plaintiff was destroyed by fire June 2, 1913; that it was located near where the track of the railroad of defendant crosses the track of the Houston & Texas Central Railway Company; that the only locomotive of defendant which passed the house, which was burned about 5 or 6 o'clock a. m., June 2, 1913, was engine No. 491. The substance of the testimony of the witnesses, who testified with reference to the fire, is as follows:

John Westbrook, for plaintiff, testified that he was living in the house at the time it was destroyed; that he had had no fire in the

house, except a lamp, for two weeks before the fire; that he left the house about 4 o'clock on the evening before the fire occurred; that he locked the door when he left; that the house was about 15 feet from the track of defendant; that trains on defendant's railroad going from west to east stopped at the crossing of the two railroads near the house and would blow the whistle before crossing; that in starting up again the locomotive would puff strongly and would throw sparks.

Green Watson for plaintiff testified, that when he went to the fire the door was locked, and that he broke it open and got inside, and, continuing, said:

"When I first saw it and went over there that house was not burning anywhere except on the roof and it was falling in; that was on the railroad side of the house; right opposite on the side over here next to my place there was no fire at all, but it burned clear across on the railroad side on the roof of the house. I did not hear any train pass by there that morning: I was asleep when that train passed. I seed that fire after I got up between 4 and 5 o'clock in the morning. I got up that morning as soon as I woke up."

C. H. Little for plaintiff testified:

"I heard 'a train pass there that morning before the fire occurred, somewhere like an hour or something before it happened. I did not get up to see which way that train was going. Neither do I know whether it was a passenger or a freight train. That train made right smart noise that morning. You know they generally stop there and start again and they make right smart of noise starting off sometimes. After the train passed I laid down and went back to sleep. I never did get up; in fact, I was already laying down; I never did get up at all. When these trains are coming towards town they stop pretty close to Moose's house. They have to stop so many feet from the crossing; and sometimes they stop further back than others, but most generally they stop right close to his house when they are going towards town. When a train stops there or checks up and starts again it is noticeable that the engine is doing additional and harder work than before; they generally work hard, a heavy train does when they go to make a start. There is no grade right there coming in the direction of town; there is a grade further back as you leave the city, leaving that yard they have got over there; when they start from there it is a kind of grade coming over, but there is no grade right along there. I have lived along that track there for 12 years. I am acquainted with about the time that the passenger trains were in the habit of passing along there; I know what the regular schedule time of the passengers along there is. I don't think there was a passenger train due along there at the time that happened at that time in the morning; the passenger was due there later in the morning, along about 6:30 or 7 o'clock; two passenger trains went by there about that time. I stated I had heard a train pass there that morning before the fire broke out. When my attention was first attracted to the fire it was real early in the morning; I couldn't state exactly the correct time, but it was very early in the morning; daylight in June is very early, somewhere between 4 and 5 o'clock, I reckon. Seeing the excitement I ran over there, and when I ran out I never thought about the time or anything like that; I just thought we would save the house if we could, or something like that. It was good daylight when I got over there, it

was daylight when I got out of the house. When I got down to the house that was burning it hadn't burned but a small bit; it was burning on the other side from me, on the side next to the track over there, and next to the track. The house was burning in front toward Herkimer street; it was burning on the roof in front next to Herkimer street, but on the side next to the track on what we call the south front; it fronted Herkimer street. I did not go to the house that morning. When I got there they already had the door open; somebody had been in the house."

Charlie Hill for plaintiff testified that he got to the house about 5:30 and took an axe and broke the door down, and, continuing, said:

"As I stated a while ago, when I first saw that house it was burning from the side over there by the 'Katy' tracks and when it burned from the side at the 'Katy' tracks, it entered up yonder the front part, and then I went over there and taken an axe and bursted the front door open, and then went inside and taken out a wash stand, dresser, and mattress."

J. W. Moose, owner of the house destroyed, knew nothing of the origin of the fire; he did not get to the house until the roof had fallen in. He testified that his house was about 18 or 20 feet from the track of the defendant company, and about 1½ blocks from the Houston & Texas Central track; that the house was ceiled overhead and there was no way of getting upstairs; that when the trains of defendant company stopped at the crossing they work hard to start up again.

J. D. Roberts, for defendant, testified that on the night on which plaintiff's house was burned, as engineer for defendant company, he made a trip over defendant's railroad from Smithville to Houston; that he used engine No. 491 and pulled about 25 cars; he could not remember the exact time he got to Houston; that as well as he could recall he got there some time between 5 and 7 o'clock in the morning, about daylight, that the report made by the conductor in charge of the train drawn by his engine shows that his train reached Houston at 3:30 a. m. on the morning of the fire which destroyed plaintiff's house, and he supposed that this report showed the proper time of arrival; that in going from Smithville to Houston when you reach the crossing of the Houston & Texas Central Railway, trains on the defendant road stop or check up and start again, and in so starting more working pressure is thrown upon the engine than when you have the train in motion, but not much with a light train; that at this crossing the grade is about level, and he could pull 90 to 100 cars with his engine; that if his engine threw any sparks when he passed the premises of plaintiff on the morning of the fire, he did not notice them.

The testimony set out above is substantially all the evidence admitted in an effort to connect the defendant company with the fire which destroyed plaintiff's house. This testimony does, perhaps, show that it was

possible for the fire to have been set out by sparks which escaped from appellee's engine, if any did so escape, of which no proof is made, but it must be remembered that the burden to show that plaintiff has been damaged by the negligence of defendant is upon the plaintiff, and testimony tending to show only that it was possible that the fire was set out by defendant's engine is not sufficient proof of that fact to entitle plaintiff to recover. No one testified that sparks escaped from defendant's engine on the morning of the fire which destroyed plaintiff's house.

In Manning v. Railway Co., 137 Mo. App. 631, 119 S. W. 464, it is said:

"The evidence in an action against a railroad company for damages from fire communicated by its locomotive is insufficient to sustain a verdict for plaintiff, where there is no evidence that sparks were emitted by the locomotive as it passed plaintiff's property, nor that a fire could be kindled by sparks or coals thrown out by a locomotive on property at the distance from the locomotive that plaintiff's property was located."

In Railway Co. v. Sadieville Mfg. Co., 137 Ky. 568, 126 S. W. 118, the court said:

"In the case under consideration no one saw any of appellant's trains pass by on the night of the fire; no one testified as to sparks coming from them; nor was there any testimony as to how the trains were managed or operated. * * * To hold a railroad company responsible in this case would make it responsible in every case for every fire occurring along its right of way, just so it was shown that its engines, shortly before and after the fire, emitted large sparks. While the courts have been liberal in authorizing the submission of this class of cases to the jury upon the ground that fires of this kind frequently occur in the night when no one is present, and it is impossible to make out a case except from the attendant circumstances, they have never gone to the extent of holding that the mere fact that other engines, shortly before and after the fire, emitted large sparks was sufficient to make out a prima facie case of negligence, in the absence of direct testimony, or some circumstances tending to show that the trains which passed before the fire, and whose passing would reasonably account for the fire, emitted sparks of fire or were otherwise negligently managed."

In Funk v. Railway Company, 122 Mo. App. 169, 100 S. W. 504, the court said:

"Though proof that a fire * * * was caused by a passing engine may, like other facts, be proved circumstantially, we think this testimony affords ground for no more than a guess that one of defendant's locomotives started the fire. The circumstances relied on are too loosely connected with the main fact in issue to serve as proof of it. Nothing was proved having the least tendency to show the fire was set by an engine, except that the railroad ran through the meadow and a train passed over it in the morning."

For other cases in point see Railway Co. v. Cullers, 81 Tex. 382, 17 S. W. 19, 13 L. R. A. 542; Railway Co. v. McIntosh, 126 S. W. 692; Fritz v. Railway Co., 243 Mo. 62, 148 S. W. at page 78; Louisville Ry. Co. v. Insurance Co., 152 Ky. 510, 153 S. W. at page 746.

From the testimony admitted in evidence, the jury could do nothing more than guess as to what caused the fire that destroyed plaintiff's house, and the defendant's rights should not be guessed away for one upon whom the burden rests to establish a cause of action against it. We therefore conclude that the trial court did not err in instructing a verdict for the defendant.

In arriving at the conclusion above stated we have not overlooked the holding of the court in the cases of S. A. & A. P. Ry. Co. v. Ins. Co., 70 S. W. 999; and M., K. & T. Ry. Co. v. Beard, 34 Tex. Civ. App. 188, 78 S. W. 253, cited in appellant's brief. These cases go a long way toward supporting the contention of appellant that the evidence in the instant case was sufficient to demand the submission of the issue to the jury as to what caused the fire which destroyed plaintiff's house, but we think the rule laid down herein, in support of the instruction of the trial court, the better rule, and that the same is supported by the great weight of authority and by sound reason, and we therefore overrule appellant's first assignment.

[2] Appellant's second, third, fourth, fifth, and sixth assignments complain of the action of the trial court in refusing to permit appellant to prove by several witnesses that, the day before appellant's house was destroyed by fire, some of defendant's engines had thrown out sparks and set out fire on its right of way. The contention of appellant in support of these assignments is that, as appellee had pleaded that none of its locomotives operated by it was defective in machinery, appliances, or equipment, appellant should have been permitted to show that some of its engines did throw out sparks shortly prior to the fire which destroyed his house, regardless of the fact that the only engine that passed appellant's house at or near same was engine No. 491, and in support of this contention he cites T. & P. Ry. Co. v. Rutherford, 28 Tex. Civ. App. 590, 68 S. W. 825; T. & P. Ry. Co. v. Ins. Co., 73 S. W. 1088; Morgan Bros. v. M., K. & T. Ry. Co., 50 Tex. Civ. App. 420, 110 S. W. 988. We do not think that any of the cases cited is authority for sustaining appellant's contention. In Railway Co. v. Rutherford, supra, complaint was made of the action of the trial court in admitting testimony to the effect that, a week or two before the fire in question in that case occurred, there was another fire on defendant's right of way. In passing upon this complaint Judge Bookhout, speaking for the court, said:

"The action of the court in admitting the testimony presents no reversible error. There was sufficient competent evidence to support the judgment, and the admission of this evidence could not have affected the result. The case was tried by the court without a jury. The trial court must have discriminated between the evidence which was legal and the evidence which was not, and based his judgment on the legal evidence."

This opinion, in effect, holds that the admission of such evidence was error, but, un-

der the facts of that case, not such error as to call for a reversal of the judgment. In Railway Co. v. Scottish Ins. Co., supra, in sustaining testimony admitted as to other fires set out by defendant's engine, the appellate court uses this suggestive language:

"It was the same engine that passed the depot platform when the cotton appears to have been ignited, and what was testified to occurred on the same occasion, and in close proximity to the fire in question."

In Morgan Bros. v. Railway Co., supra, Justice McMeans, speaking for this court, said:

"Appellants sought to prove by the witness Psencik that he had, on the 19th of November, 1905, seen an engine of the appellee railway company set out a fire near Plum. An objection to the testimony was sustained, and on this action of the court appellants base their thirty-seventh assignment of error. The testimony shows that the engine that was being operated at the time of the destruction of the cotton was No. 419. It was not attempted to be shown by Psencik that the engine which set out the fire near Plum was engine 419. The rule seems to be that, when the particular engine which caused the fire complained of cannot be identified, evidence that sparks and burning coals were frequently dropped or fires set out by engines passing upon the same road on other occasions, at about the time of the fire, is admissible to show habitual negligence, and to make it probable that appellants' injury proceeded from the same cause. In the present case it is evident that the only engine which would have set out the fire that destroyed the compress and appellants' cotton was engine 419, and the inquiry was properly limited to the construction, condition, and operation of that particular engine. Railway Co. v. Home Ins. Co., 70 S. W. 1000; Railway Co. v. Chittim, 31 Tex. Civ. App. 40, 71 S. W. 297."

It is practically conceded by both parties that if the fire which destroyed appellant's house was caused by sparks thrown from any engine of appellee, it was from engine No. 491, and therefore the inquiry was properly limited to the construction, condition, and operation of that particular engine. S. A. & A. P. Ry. Co. v. Home Ins. Co., on rehearing, 70 S. W. 1000; Morgan Bros. v. M., K. & T. Ry. Co., 110 S. W. at page 988; Nussbaum v. Railway Co., 149 S. W. 1083; McFarland v. Railway Co., 88 S. W. 450.

[3] J. E. Roberts for defendant testified that he was the engineer on engine No. 491 on its run from Smithville to Houston on June 2, 1913; that it was his impression that he reached Houston on that run some time between 5 and 7 o'clock a. m., June 2d, but on being shown a report of the conductor in charge of the train drawn by said engine No. 491 on June 2d, he stated that such report was one required by the rules of the defendant company, and that such report would more likely show the correct time of the arrival of said train at Houston than his present recollection of said arrival; that he did not see the conductor make said report. He also testified that under the rules of said defendant company he also made a report of the time of the arrival of said engine, and that he had the same in his book at Smithville, but as he had not been requested to produce the same he did not have it with him. The conductor who made the report was not sworn as a witness, nor did any witness testify that the report of the conductor was correctly made, or that it did in fact show the correct time of the arrival of said train. Over the objection of appellant, Moose, this report was admitted in evidence, and on this action of the court appellant bases his seventh assignment of error. We think the assignment well taken. No witness testified that the report introduced in evidence was correctly kept, or that it did in fact show the correct time of the arrival of said engine at Houston. But we are of the opinion that such error did not amount to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court, and therefore under the provisions of rule 62a (149 S. W. x) for the Court of Civil Appeals, we overrule appellant's assignment No. 7. We think that the fact that said report shows that said engine No. 491 passed appellant's premises at or about 3:30 a. m., about an hour before the fire which destroyed appellant's house was discovered, was more favorable to appellant than was the testimony of the engineer Roberts, to the effect that he thought that said engine arrived at Houston between 5 and 7 o'clock, as evidently if the fire which destroyed appellant's house originated from a spark thrown thereon from defendant's engine, it must have been thrown upon said house some time before the house was discovered burning, at or about 4:30 or 5 o'clock.

We find no such error in the trial of this case in the lower court which should cause a reversal of the judgment there rendered; therefore the judgment of the trial court is affirmed.

Affirmed.