LILLARD MILLING CO. v. BROOKS & FEW. (No. 8890.)

(Court of Civil Appeals of Texas. Ft. Worth. May 25, 1918.)

1. TRIAL ☞253(10)—INSTRUCTIONS IGNORING EVIDENCE—SALES—ACCEPTANCE.
·Instruction that, if seller of carload of flour sent bill of lading and draft to bank other than agreed on, causing delay in delivery and accrual of demurrage, buyer could refuse to accept carload unless plaintiff paid demurrage was error, where there was evidence, ignored by such instruction, that buyer agreed to accept and pay demurrage upon a rebate in price per barrel.

2. TRIAL ☞213 — INSTRUCTIONS — PROVINCE OF COURT.
It is the duty of the court to instruct the jury as to the law applicable to the facts.

3. TRIAL ☞337—INSTRUCTIONS—JURY.
It is the province of the jury to receive and follow instructions as to law applicable to the facts.

4. TRIAL ☞296(1) — CONFLICTING INSTRUCTIONS—CURE.
The giving of a special charge which is antagonistic upon a material issue to some other portion of the charge is reversible error, although the instruction given in the other portion of the charge is correct.

Appeal from Wise County Court; J. W. Walker, Judge.

Action by the Lillard Milling Company against Brooks & Few. Judgment for plaintiff in the justice court, and defendant appealed to county court. From the judgment of the county court giving him insufficient relief, plaintiff appeals. Reversed and remanded.

R. E. Carswell, of Decatur, for appellant. McMurray & Gettys, of Decatur, for appellee.

BUCK, J. Appellant filed suit in the justice court of Wise county to recover a balance of $55, alleged to be due by defendants on open account, and the further sum of $120.37, as damages for the breach of an alleged contract whereby appellees agreed to purchase from appellant a carload of mill products, which was shipped from Decatur to Jacksonville, Tex., and which appellees refused to accept and pay for, whereupon appellant

caused said goods to be shipped to Decatur, and later resold. The claim of $120.37 consisted of $40, alleged to have been paid for demurrage accruing while the car was at Jacksonville, and $80.37 freight charges paid on shipment to Jacksonville and return. Defendant pleaded that, as a part of the contract between plaintiff and defendant, it was agreed that defendant should have the benefit of any decline in the market, and that defendant stipulated in the order for the goods, and which stipulation was accepted by plaintiff, that the bill of lading and attached draft should be sent to the Farmers' Guaranty Bank of Jacksonville, for collection, arrangements having been made at that bank to take care of the same; and the plaintiff, ignoring said stipulation and in violation of its agreement, sent the bill of lading and draft to the First National Bank of said place; that said last-named bank did not notify defendants for some time that it had the bill of lading and draft, and that in the meantime considerable demurrage had accrued, which plaintiff declined to allow for, and that the market price of the flour had declined, and plaintiff refused to make the agreed reduction therefor; and that hence the defendants were justified in refusing to accept the shipment and paying therefor, under the circumstances pleaded. In the justice court judgment was rendered for plaintiff for the full amount claimed, but on appeal to the county court judgment was rendered for plaintiff for only the $55 item, with costs of appeal from the justice court and the costs in the county court taxed against the plaintiff. From this judgment plaintiff has appealed.

The first assignment complains of the giving of defendant's specially requested charge as follows:

"If you find from the evidence that in making the agreement for the car bought by defendants from plaintiff January 13, 1916, it was part of the agreement that the bill of lading and draft should be sent to the Farmers' Guaranty State Bank of Jacksonville, and that said bill of lading was sent to some other bank contrary to said agreement, and if you further find that by reason thereof the car was delayed in being delivered to defendants and demurrage thereby caused to accrue, you are instructed that defendants were not responsible for such demurrage, and had the right to decline to take said car of mill products, unless plaintiff arranged to relieve defendants of having to bear the expense of such demurrage."

The objections to this charge, as shown by appellant's bill, were:

"(1) That said charge unnecessarily repeats defendant's defense that the draft was misrouted, and unduly emphasizes before the jury such defense, and is calculated to induce the jury to believe that the court thought such defense was established; (2) because said charge ignored the agreement pleaded by plaintiff and testified to by witness Lillard, made over the phone with defendant Brooks, wherein it is contended by plaintiff that Brooks agreed, in consideration of rebating the price 20 cents per barrel, to pay said demurrage and accept the car, and authorized the jury to find for the defendant, notwithstanding such agreement; (3) because such charge is in conflict with special charge No. 1, given at the instance of plaintiff, and special charge No. 1, given at the instance of defendant."

The special charge given at the instance of the defendants, referred to in these objections, is as follows:

"If you find from the evidence that according to the agreement between the parties as to the purchase of the car of mill products sold by plaintiff to defendants on January 13, 1916, the bill of lading was to be sent to the Farmers' Guaranty State Bank of Jacksonville, and that said bill of lading was in fact sent to another bank contrary to said agreement, and the delivery of the car to defendants was thereby delayed and demurrage thereby caused to accrue thereon, and the market price of said mill products declined during such time, and if you further find that defendant Brooks offered to accept and pay for said car of products if plaintiff would make allowance for the decline in the market price of said products and pay the demurrage, and that plaintiff failed to make allowance and pay said demurrage, but instead thereof directed the return of said car to Decatur, you are instructed that in such event defendants are not liable for anything on account of not receiving said car."

The special charge given at the instance of plaintiff, also referred to, is as follows:

"If you find and believe from the evidence that after the draft and bill of lading became accessible to defendants, and after they could have gotten possession of the same they agreed with plaintiff to pay for and accept the car of mill products and pay the demurrage if plaintiff would rebate the price 20 cents per barrel, and plaintiff accepted said offer and rebated the price accordingly and that defendants thereafter refused to accept said mill products and pay for same, and plaintiff was thereby forced to take charge of the same, and did take charge of same and resell it, defendants would be liable for the items of freight and demurrage, if you find that it paid the same, and that it was necessary for it to pay the same in order to be able to resume possession of said car of mill products for the purpose of reselling the same, and that said freight and demurrage charges were proper and reasonable charges against said car."

In addition the court in his main charge instructed the jury as follows:

"As to the item of demurrage claimed by plaintiff, defendants would not be responsible for so much of same, if any, that accrued upon said car before defendants could have obtained possession of same and unload said car, if such delay was occasioned by the failure, if any, of plaintiff to have the draft with bill of lading sent to the Farmers' Guaranty Bank for collection if you further find and believe from the evidence that the failure of defendants to accept said car and pay for the same was occasioned by such failure of plaintiff to have said draft and bill of lading sent to said bank.

"If you believe from the evidence that it was agreed by and between plaintiff and defendants, or that it was the general custom of the trade, that defendants were to be allowed in discount the decline, if any, in the price of such mill products occurring between the date of sale and the date when the bill of lading became so accessible to defendants that they could have reasonably obtained the same and accepted and received said carload of mill products, and if you believe there was such a decline, and that plaintiff refused to allow defendants the amount of such decline, then you will find that the plaintiff is not entitled to recover herein on account of said items of freight and said demurrage."

The first proposition under this assignment is that said charge unduly and unnecessarily emphasizes the defense set up by defendants that the bill of lading and attached draft was sent to the wrong bank, and that the unnecessary repetition was calculated to cause the jury to believe that this was "an important defense."

[1] We are not entirely agreed as to the tenability of the contention made in the first proposition under this assignment. The writer is inclined to the opinion that the proposition presents error. M., K. & T. Ry. Co. of Texas v. Dunbar, 49 Tex. Civ. App. 12, 108 S. W. 500; Pettithory v. Clarke & Courts, 139 S. W. 989; Redmond v. Cotton Mills, 100 S. W. 186. But in this connection see Traylor v. Townsend, 61 Tex. 144; Ratto et al. v. Bluestein, 84 Tex. 57, 19 S. W. 338; Continental Ins. Co. v. Pruitt, 65 Tex. 125. But Justice Dunklin is of the opinion that, even though it may be admitted that said charge unnecessarily repeats the defense urged by defendants, yet it does not appear that such repetition was reasonably calculated to injure the plaintiff as there was no conflict of evidence as to the fact that plaintiff did send the bill of lading and draft to a bank other than that stipulated by defendants. But we both agree that under the second proposition prejudicial error is shown, which proposition is to the effect that the charge is erroneous and misleading because it ignores the agreement testified to by the witness Lillard, made over the phone with defendant Brooks. S. A. Lillard, manager of plaintiff, testified that after shipping the car and drawing the draft on February 19, 1916, he received from defendants a letter informing the plaintiff that the draft had not reached the Farmers' Guaranty Bank, whereupon he instructed the Decatur Bank to have the draft placed in the Guaranty Bank of Jacksonville; that further negotiations were then had between Brooks and Lillard, and that Brooks finally agreed to take the shipment at a reduction of 20 cents on the barrel, and also to pay the demurrage; that defendants, wholly ignored this agreement, and failed to communicate any further with plaintiff, and the plaintiff was thereupon forced to have the car rebilled to Decatur and pay the freight both ways and the demurrage. This particular defect of omission is shown to have been called to the court's attention before the charge was given. In this respect the charge given at the instance of plaintiff, heretofore set out, and the charge given at the instance of defendants, and of which complaint is made, are in direct conflict and we think that such conflicting instructions were reasonably calculated to and probably did mislead the jury.

This conclusion of probable prejudicial error is supported by the fact that there is considerable evidence tending to show that the real reason defendants did not accept and unload the car upon its arrival at Jacksonville was that the defendants did not have room in which to store the flour, and preferred to pay demurrage. The railway agent and the cashier both testified to the fact that one of the defendants, Mr. Brooks, was in the freight office of the International & Great Northern Railway Company the day the car arrived, and asked that it be allowed to remain on the track till he could arrange for a place in which to store the shipment. Again he was notified by the agent of the railway company, and again did he request time for the same reason given.

[2-4] It is no answer to the claim that a special charge given is erroneous or defective to say that in some other portion of the court's charge the correct instruction was given. Juries are not presumed to be composed of men trained in the law. It is the duty and the province of the court to instruct them as to the law applicable to the facts, and it is the duty of the jury to receive and follow such instruction. Where one charge conflicts with another they nullify and neutralize each other, and leave the jury without any rules of law by which to determine the rights of the parties, and such antagonistic instructions when upon a material issue are grounds for reversal. Tex. R. Co. v. Hooten, 21 Tex. Civ. App. 139, 50 S. W. 499; Railway Co. v. Beard, 34 Tex. Civ. App. 188, 78 S. W. 253; Baker v. Ashe, 80 Tex. 356, 16 S. W. 36; Belt v. Raguet, 27 Tex. 471; S. K. Ry. Co. v. Sage, 98 Tex. 438, 84 S. W. 814.

The other assignment complains that the verdict of the jury is against the great preponderance of the evidence, and without sufficient testimony to support it. As the evidence may be different upon another trial, we do not deem it incumbent upon us to determine the question as to whether the evidence so strongly preponderates in favor of plaintiff's right to recover for the alleged breach as to indicate that the jury must have been influenced by bias or some other improper motive to render the verdict returned. But the state of evidence does not fortify our conclusion that reversible error was committed in the giving of the special charge of which complaint is made in the first assignment.

For the reasons given, the judgment is reversed and the cause remanded.

Reversed and remanded.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.